The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Lawrence B. Shuping, Jr., and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the entire record of evidence, including the Deputy Commissioner's firsthand observations of the witnesses, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties through a Pre-Trial Agreement and at the hearing on 28 January 1997 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties or of necessary or additional parties.
3. No parties are appearing in a representative capacity.
4. There are no third-party defendants or cross claims.
5. In addition to the other stipulations contained herein, the parties hereto stipulate and agree with respect to the following undisputed facts:
 a. This case is subject to the North Carolina Workers' Compensation Act.
 b. An employment relationship existed between the employee and employer on or about 17 January 1994.
 c. The employee's average weekly wage is $561.00 plus commissions.
6. The parties stipulated that plaintiff's medical records, all Industrial Commission forms, plaintiff's employment records, the recorded statement of Kenny Cox dated 6 January 1995, plaintiff's personnel file, and the reports and videotapes from MJM Investigations could be stipulated and received into evidence.
7. The issues to be resolved are: (a) did plaintiff suffer a specific traumatic incident within the course and scope of his employment which renders him disabled and entitled to workers' compensation benefits under the North Carolina Workers' Compensation Act; (b) if so, to what benefits is plaintiff entitled to receive pursuant to the North Carolina Workers' Compensation Act.
 ***********
Having considered all the evidence, including the firsthand observations of the witnesses by the Deputy Commissioner, the Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing on 28 January 1997, plaintiff was a 49 year old man who had graduated from high school and had completed one year of trade school for auto diesel mechanics and welding. Plaintiff worked for a trucking company for several years as a diesel mechanic, and did paint and body work. Subsequently, he opened his own auto body repair business.
2. Plaintiff began working for employer in March 1983. His position was as a traveling sales representative in the automotive division.
3. Although hired while he lived in Rocky Mount, plaintiff subsequently moved to Manns Harbor. In addition to working for defendant-employer, plaintiff operated a part-time commercial fishing and crabbing business.
4. For his work with defendant-employer, plaintiff maintained an office in the spare bedroom of his residence in which he did paperwork and assorted tasks related to his work. In the trunk of his company vehicle, plaintiff also carried various catalogs, brochures and other literature for his customers and maintained them in a plastic parts tote that weighed approximately forty pounds when full.
6. Plaintiff has a medical history of cervical and low back pain and numbness and tingling radiating into the left arm and hand and has sought chiropractic treatment with Dr. Craig Gibson for the same symptoms beginning in 1990. In June 1990, Dr. Gibson determined that plaintiff was unable to return to his regular work with defendant-employer because of the pain in his cervical and lumbar spine, as well as numbness in his left arm and left leg. Plaintiff was eventually able to return to his regular duties in 1990 and thereafter, but continued to have back problems.
7. Plaintiff alleges that on or about Tuesday, 4 January 1994, he was lifting the approximately forty pound plastic tote of materials out of the trunk of his company vehicle when he felt something in his back pop, resulting in low back pain. Plaintiff did not report this incident to his employer until August 1994, after his annual performance review.
8. Plaintiff alleges that prior to January 1994, he did not have any low back pain. Based on the stipulated medical records and plaintiff's testimony at the hearing, the Full Commission finds that plaintiff's testimony with regard to his low back problems prior to January 1994 is not credible.
9. Plaintiff alleges that he stayed out of work the entire week after 3 January 1994 and returned to work on the following Monday. Plaintiff did not seek medical treatment until 17 January 1994, when he first sought medical treatment at the Outer Banks Medical Center from Dr. James Stephens, who provided a conservative course of treatment consisting of various medications, exercises and physical therapy. Plaintiff subsequently had a diagnostic MRI of the lumbosacral spine, which showed degenerative disk disease at several levels. Dr. Stephens referred plaintiff for a neurologic evaluation by Dr. David W. Swingle at Atlantic Neurosurgery. Dr. Swingle noted that the plaintiff claimed he had a long history of low back problems, but never had any lower extremity symptoms. This is contrary to the 1990 claim for disability benefits certification wherein it was noted that plaintiff had numbness in his leg. Dr. Swingle provided a conservative course of treatment consisting of various medications and physical therapy and referred plaintiff for a diagnostic MRI of the cervical spine because of his concurrent neck pain and left arm numbness. The cervical MRI also showed degenerative disk disease. Contrary to plaintiff's testimony, Dr. Swingle's medical notes reflect that he did not recommend surgery.
10. On 21 June 1994, plaintiff was seen at Outer Banks Medical Center complaining of low back pain that he had been experiencing for four to five days. The medical notes indicate that plaintiff was deep sea fishing on the day prior to the onset of his back pain.
11. In August 1994, plaintiff was helping his wife lift a refrigerator and felt pain in his low back. On 23 August 1994, plaintiff told Kenny Cox, a business associate, that he could not lift anything because he had hurt his back lifting a refrigerator.
12. On 15 August 1994, plaintiff was seen at Outer Banks Medical Center complaining of low back pain for 24 hours and was diagnosed with acute lumbar strain.
13. Mike Paul, plaintiff's supervisor, testified that plaintiff never mentioned the January 1994 lifting incident to him or any other employee of employer until late August 1994, following plaintiff's annual performance evaluation. During the evaluation, plaintiff was informed he would be put on probation for poor job performance.
14. Mr. Paul testified that he knew plaintiff had a long history of back problems. Over the many years prior to 1994 that they had known each other, plaintiff had told Mr. Paul on numerous occasions that he had felt like he had pulled a muscle in his back, and that it would be particularly bothersome when he drove for long periods of time.
15. Mr. Paul also testified that he had been with plaintiff on his commercial fishing boat on numerous occasions and specifically recalls going shrimping with plaintiff in August 1994. Mr. Paul testified that plaintiff was not having any particular problems with his back at that time.
16. On 8 September 1994, plaintiff was seen for a second opinion by Dr. Stanley Peters at Hickory Orthopedic Center. Plaintiff complained of pain mostly in the intrascapular area and denied any lower extremity pain, but had some pain and numbness in the left hand and volar aspect of the forearm to the elbow. Dr. Peters noted that plaintiff had upper and lower back pain for five years. Dr. Peters did not recommend surgery for either plaintiff's lumbar or cervical problems, but did recommend that he should have EMG and PNCV studies for the upper extremities if he wanted surgery.
17. Between 10 January 1994 and 5 October 1994, plaintiff continued to perform his regular job duties.
18. On 5 October 1994, plaintiff saw Dr. Craig Gibson complaining of cervical pain, with pain, numbness and tingling radiating into the left arm and hands, specifically at the C6-C7 dermatome level. He also complained of intermittent low back pain with numbness radiating into the thigh. Dr. Gibson took plaintiff out of work because of the prolonged driving required by his sales representative job. Dr. Gibson did not indicate that plaintiff's inability to drive for long periods of time was specifically related to any low back condition.
19. On 31 March 1995, plaintiff returned to Dr. Swingle for evaluation. Dr. Swingle suspected a chronic cervical spondylitic radiculopathy and healed lumbar disc herniations with no objective evidence of radiculopathy or myelopathy. Dr. Swingle did not recommend surgery and believed plaintiff wanted justification for being out of work.
20. During the time that plaintiff was working for defendant-employer, he was operating a commercial fishing business. When plaintiff stopped working for defendant-employer in October 1994, he testified that he was able to do more with his fishing business. The evidence in the record showed that plaintiff was performing various duties involved in the fishing business without any visible pain, discomfort, restriction of movement, or hindrances. Plaintiff testified that he is able to commercially fish for crab, shrimp, and fish using nets, crab pots and hook and line. He is able to launch, operate, and clean his boat without difficulty. Mr. Paul testified that he had been fishing with plaintiff on his boat and observed the plaintiff performing those duties. Mr. Paul stated that, "its a pretty tough process."
21. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer on or about 4 January 1994.
22. There is no competent evidence in the record that the January 1994 lifting incident caused plaintiff to be unable to perform his duties with defendant-employer or to sustain any disability as defined under the Act. There is no evidence that plaintiff was removed from work as a result of the January 1994 incident. Further, there is evidence that plaintiff continues to have the ability to earn comparable wages.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer on or about 4 January 1994. G.S. § 97-2(6).
2. Plaintiff has failed to carry his burden of proving that he is, as a result of a compensable injury, unable to earn wages which he was receiving at the time of the January 1994 incident in the same or other employment and is, therefore, not entitled to benefits under the Act. Id.; G.S. § 97-2(9).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and is, DENIED.
2. Each side shall bear its own costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER